Burnes, Nonnie S., J.

INTRODUCTION

After prevailing against the plaintiffs in a jury-waived trial before this court, the defendants sought the reasonable costs and fees arising from the defense of this action. The defendants moved pursuant to G.L.c. 261 and Mass.R.Civ.P. 54, and pursuant to G.L.c. 231, §6F. Upon consideration of the pleadings, the evidence from the jury-waived trial, and the hearing on the motions, the court denied the defendants’ motion for G.L.c. 261 costs and allowed the defendants’ motion for G.L.c. 231, §6F, costs. In addition to allowing the defendants’ G.L.c. 231, §6F, motion, this court ordered the parties to submit further materials in order to assist this court in determining the reasonableness of the defendants’ request for $1,290,439.00 in attorneys fees,[3] $112,747.25 in costs, and $987.00 in out-of state witness travel costs. Based on these materials, this court finds that the defendants are entitled to $1,161,395.10 in attorneys fees and $69,546.16 in costs, including out-of-state witness travel costs.

DISCUSSION

The principal argument that the plaintiffs make in opposing the defendants’ application for fees and costs is the fact that the court determined that the plaintiffs’ claims never had any merit. The plaintiffs further say that, if that is true, then the major claims of the plaintiffs were, as they say, “dismissible on day one.” The plaintiffs argue that the defendants should not be awarded the fees they seek because they did not shorten this case by filing a motion to dismiss, a motion for judgment on the pleadings, or a motion for summary judgment.
This argument turns G.L.c. 231, §6F, on its head. That is, the plaintiffs say that if the defendants do not save them from themselves, then the defendants have to carry the responsibility for the cost of litigating the case. To accept this argument would vitiate G.L.c. 231, §6F. While the defendants certainly thought that the case was meritless from the beginning, it would have been a tall order to convince a Superior Court judge to dismiss the case under Mass.R.Civ.P. 12(b)(6), or on the pleadings or to award summary judgment.
To begin with, on a motion to dismiss or for judgment on the pleadings, the court must take the facts as pled as true unless the complaint reveals without doubt that the plaintiff could prove no set of facts that would entitle him to relief. Curran v. Boston Police Patrolmen’s Ass’n, Inc., 4 Mass.App.Ct. 40, 41 (1976) (motion to dismiss); Sampson v. Lynn, 405 Mass. 29, 30 (1989) (motion for judgment on the pleadings). “[A] complaint should not be dismissed if it would support relief under any theory of law.” Whitinsville Plaza, Inc. v. Kotseas, 378 Mass 85, 89 (1979), cited in Wrightson v. Spaulding, 20 Mass.App.Ct. 70, 71 (1985). The court must also accept any inferences that may be drawn from the complaint as true and in the plaintiffs favor. Jones v. Brockton Pub. Markets, Inc., 369 Mass. 387, 388 (1975).
The Amended Complaint is replete with allegations of malfeasance on the part of the defendants. See e.g., First Amended Complaint, ¶15 (“Cambridge Company, Millman, Fowler and Wolff failed to tell the Plaintiffs that they intended to control the Maple East Partnership for their own personal benefit and not to the benefit of the Plaintiffs of the partnership as a *367 whole”), and ¶58 (“The February 28 Memorandum failed to advise the Plaintiffs that if Maple East Associates Limited Partnership had been afforded the opportunity to purchase 1 and/or 9 East Street, the parking problem would have been resolved, the office space in the Maple Leaf Building would have commanded higher rent and thus a larger revenue stream, and the 23 East Street property would have been valued and sold for a higher amount”). It is so unlikely as to be a sure thing that no Superior Court judge would have dismissed this case on the pleadings, given the seventy-two paragraphs of allegations of wrongdoing on the part of the defendants. Courts are veiy reluctant to deprive a plaintiff of the opportunity to do discovery and attempt to prove the case. “The simple truth is that the appellate courts, expressing an eviscerative distaste for Rule 12(b)(6), have made clear that summary judgment, not a motion to dismiss, should be ‘the weapon of first choice.’ ” 6 Smith & Zobel, Rules Practice, §12.13 at 211 (2006), citing Kirkland Constr. Co. v. James, 39 Mass.App.Ct. 559, 564 (1995) (question of reliance on attorneys’ advice not subject to dismissal; also premature to dismiss 93A, negligent supervision and partnership liability claims) (Brown, J. concurring, noting wasted effort on the part of, especially, the party moving to dismiss).
The defendants cite one authority — U.S. Funding, Inc. of America v. Bank of Boston Corp., 28 Mass.App.Ct. 404 (1990), which itself cites Wrightson v. Spaulding, 20 Mass.App.Ct. 70, 72 (1985)—in support of their argument that the defendants should have moved for summary judgment in order to avert a trial and, thus, reduce the fees incurred. Wrightson, which U.S. Funding cites, recommends the filing of a motion for summary judgment if a complaint is merit-less. Neither case requires such a motion. Indeed, had the defendants filed a motion for summary judgment and it had been denied — a likely occurrence, given the claims — then the plaintiffs would likely have argued that the denial showed that the claims were not merit-less.
This court can say from ten years’ experience as a trial judge in the Superior Court and years before that as a trial lawyer that it is nearly as unlikely that a Superior Court judge would have allowed summary judgment as it would have allowed a motion to dismiss. This complaint makes all kinds of claims that trial judges are advised to leave for a jury — claims of breach of the duty of good faith and loyalty, breach of fiduciary duty, fraud, misrepresentation, misappropriation of a business opportunity. All these claims asserted bad faith, lack of good faith, malicious intent, carelessness, negligence, knowing and intentional bad acts — all ordinarily matters for a jury. See, e.g., Sudbury v. Scott, 439 Mass. 288, 302 (2003) (state of mind or motive); Seaco Ins. Co. v. Barbosa, 435 Mass. 771, 779 (2002) (intent of parties in order to interpret ambiguous contract terms); Quincy Mut Fire. Ins. Co. v. Abernathy, 393 Mass. 81, 86 (1984) (state of mind or motive); Bray v. Community Newspaper Co., 67 Mass.App.Ct. 42, 43 (2006) (intent); Inferrera v. Town of Sudbury, 31 Mass.App.Ct. 96, 103 (1991) (negligence and reckless conduct). See generally 8 Smith & Zobel, Rules Practice, §56.8 (Sup. 2007) 194-99 passim.
General Laws c. 231, §6F, requires that the claimant make some judgment about the merits before a claim is filed; the statute does not put the responsibility on the defendant to convince the court of the lack of merit before trial nor does it put the responsibility on the court to ferret out a frivolous case prior to trial. If the plaintiffs bring a frivolous claim, then the defendants are entitled to recover their reasonable fees and costs, whenever the determination of frivolousness is made. The court will award appropriate fees and costs in this case.
Section 6F of G.L.c. 231 permits “any party in a civil action in which a finding, verdict, decision, award, order or judgment has been made by a judge” to file a motion asking the court to determine “that all or substantially all of the claims, defenses, setoffs or counterclaims, whether of a factual, legal or mixed nature, . . . were wholly insubstantial, frivolous and not advanced in good faith.” G.L.c. 231, §6F para. 1. Where, as here, the court find a lack of good faith and frivolousness “with respect to a party’s claims, the court shall award to each party against whom claims were asserted an amount representing the reasonable counsel fees and other costs and expenses incurred in defending against such claims.” Id., §6F para. 2. The court must award these costs and fees in “a separate finding of facts, corollary to the decision on the merits in the underlying action.” Ben v. Schultz, 47 Mass.App.Ct. 808, 814 (1999). “The court shall include in such finding the specific facts and reasons on which the finding is based.” G.L.c. 231, §6F para. 1.
This court has already issued its findings in the February 2007 decision allowing the defendants’ G.L.c. 231, §6F, motion. Those findings, however, did not “specify in reasonable detail the method by which the amount of the award was computed and the calculation thereof’ as G.L.c. 231, §6F, requires. Id., §6F para. 4. Based on the parties’ filings, this court sets forth those specifics here.

I. Attorneys Fees

“The amount of a reasonable attorneys fee, awarded on the basis of statutory authority, in this case G.L.c. [231, §6F], is largely discretionary with the judge, who is in the best position to determine how much time was reasonably spent on a case, and the fair value of the attorney’s services." Fontaine v. Ebtec Corp., 415 Mass. 309, 324 (1993). “[A]n amount . . . calculated by multiplying the number of hours reasonably spent on the case times a reasonable hourly rate ... is generally referred to as a ‘lodestar’ award.” Id., see e.g., Cholfin v. Gordon, Civil No. 943623C, 1998 WL *368 1182066, *1 (Mass.Super.Ct. March 17, 1998) (Gershengorn, J.) (applying lodestar method to award of attorneys fees pursuant to G.L.c. 231, §6F).
When determining a reasonable attorneys fee, the focus is not the bill submitted, ... or the amount in controversy, . . . but several factors, including “the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases.” No one factor is determinative, and a factor-by-factor analysis, although helpful, is not required.
Berman v. Linnane, 434 Mass. 301, 303 (2001) (internal citation omitted), quoting Linthicum v. Archambault, 379 Mass. 381, 388-89 (1979); see Smith v. Bell Atlantic, 63 Mass.App.Ct. 702, 725 (2005) (“Under the approved ‘lodestar’ method, the judge is to establish the time reasonably expended and multiply it by a reasonable hourly rate, taking into account factors such as ‘complexity, the result obtained, and the experience, reputation, and ability of the lawyer’ ” (quoting Borne v. Haverhill Golf & Country Club, Inc., 58 Mass.App.Ct. 306, 324 (2003))).
The defendants request $1,290,439.00 in attorneys fees which they allege their attorneys, paralegals, and other support staff earned working on this case for 5223.8 hours, spanning from 2002 through May 2006.[4] They have submitted invoices detailing the attorneys’ and paralegals’ tasks and the hours spent on those tasks, and they have provided a spreadsheet indicating the hourly rate for each attorney and paralegal in addition to the hours worked. See T&D Video, Inc. v. City of Revere, 66 Mass.App.Ct. 461, 477 (2006) (placing burden on fee applicant to document in detail the hours expended and market rate of fees). The defendants’ attorneys, paralegals, and support staff all work at the law firm of Wilmer Cutler Pickering Hale and Dorr, LLP (“WilmerHale”), a large Boston law firm.
“Calculation of reasonable hourly rates should begin with the average rates in the attorney’s community for similar work done by attorneys of the same years’ experience.” School Comm. of Norton v. Massachusetts Comm'n Against Discrimination, 63 Mass.App.Ct. 839, 852 (2005), quoting Stratos v. Department of Pub. Welfare, 387 Mass. 312, 323 (1982). “(TJhese ‘[r]ates may differ according to the type of service performed — courtroom work, research, travel, or other tasks.’ ” Id. (second alteration in original), quoting Stratos, 387 Mass. at 323. The basic measure of reasonable attorneys fees, i.e., “a ‘fair market rate for the time reasonable spent preparing and litigating a case[,]’ should be the amount of the award unless there are special reasons to depart from it.” Stowe v. Bologna, 417 Mass. 199, 203 (1994), abrogated on other grounds by Fabre v. Walton, 441 Mass. 9, 10-11 (2004), quoting Fontaine, 415 Mass. at 326; T&D Video, Inc., 66 Mass.App.Ct. at 476-77 (“The rate applied to the reasonable hours expended should be the prevailing rate in the community, taking into account the experience and qualifications of the attorneys involved”).
Attorney Stephen Oleskey (“Attorney Oleskey”), a senior partner at WilmerHale and lead counsel representing the defendants, states in his affidavit that he is familiar with the range of hourly attorneys fees among firms in this area involved in the defense of complex commercial litigation during the relevant time period. He opines that the fees charged in this base “are in the range of fees customarily charged for the defense of complex commercial litigation such as this by larger law firms in Boston.” Oleskey Affidavit, ¶6. Attorney Oleskey also provided this court with a summary of the fees listed in The 100 Largest Law Firms in Massachusetts, a 2006 Massachusetts Lawyers Weekly publication. The rates WilmerHale billed for its partners, associates, and paralegals are consistent with the rates that law firms considered to fall within Massachusetts’ twenty largest law firms charged.
Two WilmerHale partners worked on this case, and their hourly rates ranged from $450 per hour to $575 per hour over the four years of this case. Five Wilmer-Hale associates worked on this case, and their hourly rates ranged from $195 to $360 over the four years of this case. Twelve WilmerHale employees classified as “Paralegal/Project Assistant” worked on this case over its four years, although not all simultaneously. Their hourly rates ranged from $110 to $195 over the four years. Given “the experience, reputation and ability of the attorney[s]” and paralegals involved in the defendants’ case as demonstrated by, at the least, their efficient and effective trial work, this court finds that the hourly rates, while high, are reasonable in the context of this action. See Berman, 434 Mass. at 303, quoting Linthicum, 379 Mass. at 388-89.
The plaintiffs do not really dispute the reasonableness of the rates, but rather whether the services WilmerHale provided are objectively worth what they charged. They point out that the defendants failed to submit affidavits from other attorneys to establish the market rates for partners and associates in comparable law firms with attorneys of comparable qualifications and skills. In his affidavit, Attorney Oleskey states that he is “familiar with the range of hourly attorneys fees and costs among firms in this area that were engaged in the defense of complex commercial litigation during the period of March 2002 through 2006.” Oleskey Affidavit, 816. This assertion, combined with the particular circumstances of this litigation, is sufficient to satisfy the defendants’ burden. See Stratos v. Department of Pub. Welfare, 387 Mass. 312, 323 (1982) (“(M)arket value must be understood to refer to the market for comparable services, rather than the market for work on similar cases”).
*369 On this point, the court finds Brooks Automation, Inc. v. Blueshift Techs., Inc., instructive. Civil No. 05-3973BLS2, 2006 WL 1537520 (Mass.Super.Ct. Apr. 6, 2006) (Gants, J.) [21 Mass. L. Rptr. 53). In Brooks Automation, Inc., a case heard in the Superior Court’s Business Litigation Session and, by description, similar to this case in terms of its complexity, the court acknowledged that a small law firm could have represented the defendant at a lower price. Id. at *4. Limiting the attorneys fees the defendant could recover on that basis, however, would be unfair because “most such [small] firms would not have been able to produce for [the defendant] the same result produced here by [the large law firm].” Id. Here, too, the defendants carried their burden that it was reasonable for WilmerHale to have charged the rates they did for the services they provided.
Similarly, the amount of hours the defendants’ attorneys and paralegals spent working on this case is similarly high, but, again, reasonable in the context of this action. The court is “not required to review and allow or disallow each individual item in the bill, but [can] consider the bill as a whole.” Id. In order to assist this court in considering the bill as a whole, the defendants provided a chart setting forth the amount of hours billed for certain events. This chart is broken down into the work performed on the preliminaiy injunction (99.4 hours); motions regarding document discovery (288.2 hours); deposition preparation and depositions (592.3 hours); opposition to summary judgment (278.9 hours); trial preparation for trial to begin June 15, 2005 (433.1 hours); trial preparation for trial to begin October 24, 2005 (434.4 hours); trial preparation for trial to begin January 9, 2006 (77.5 hours); and final trial preparation and trial, including pretrial motions, for trial taking place from March 28, 2006 through April 7, 2006 (1517.2 hours).[5]The total amount WilmerHale billed the defendants is 3721 hours. The chart further breaks down the amount of hours the partners, associates, and paralegals spent working on the case. Partners billed 430.4 hours total, associates billed 1702 hours total, and paralegals billed 1588.6 hours total.
The defendants contend that the high amount of hours WilmerHale spent working on this case resulted from the plaintiffs’ litigation tactics. For example, the plaintiffs demanded twenty years’ worth of financial records. While it is reasonable that the plaintiffs wanted to determine whether the defendants charged fees that were market rate, by the time the plaintiffs made their requests, the statute of limitations had run on any actions that could possibly have arisen out of the majorily of those records. Additionally, up until the day of trial, the plaintiffs insisted upon a jury trial, and the defendants therefore prepared and spent time and resources accordingly. Once the plaintiffs decided to proceed without a jury, the defendants’jury-related preparation was rendered meaningless and in vain.
Another of the court’s considerations in determining the reasonableness of attorneys fees is the result obtained. See Berman, 434 Mass. at 303. Here, the defendants allege that, had the plaintiffs prevailed, the defendants would likely have been required to pay damages of almost $6 million and would have faced substantial harm to their professional reputations and livelihoods. See, e.g., Brooks Automation, Inc., 2006 WL 1537520, at *4 (taking into consideration that outcome of lawsuit would affect “fate of a corporation, and the livelihood of its employees” when determining reasonableness of fees). Attorney Robert Wolfe himself, the plaintiffs’ trial attorney, states in his affidavit that the plaintiffs’ claims against the defendants, including interest, “represented a risk of loss to the defendants in excess of $9,000,000.” Wolfe Affidavit, ¶24. The defendants also stress that their reputations as competent real estate developers in a highly competitive market was at risk, a risk not to be belittled. Thus, the defendants acted reasonably in expending considerable resources in defending the plaintiffs’ claims against them. On this basis, as well, the hours spent on this case were reasonable.
Finally, in calculating reasonable attorneys fees, “the court should [also] consider the time counsel spent on the case exclusive of hours that are excessive, redundant, duplicative, or unproductive.” T&D Video, Inc., 66 Mass.App.Ct. at 476. The above discussion notwithstanding, a close reading of the defendants’ invoices displays overlap in tasks that results in some double billing. See, e.g., Simon v. Solomon, 385 Mass. 91, 113 (1982) (affirming trial court’s award of attorneys fees [to defendant] that “excluded duplicative and unnecessary work, and work spent on . . . claim, on which [court] had directed a verdict for [plaintiff]”); Kane v. Kane, 13 Mass.App.Ct. 557, 561 (1982) (remanding to trial court for recalculation of attorneys fees where “[m]any of the conferences between counsel appear to have been unnecessary and led to some overall duplication of effort”); cf. Hannon v. Original Gunite Aquatech Pools, Inc., 385 Mass. 813, 828 (1982) (“To the extent that the attorney’s fees and expenses incurred by [defendant] are attributable to this duplication of effort [during arbitration proceedings and at trial], [plaintiff] should not be held liable for those fees and expenses”). For example, on November 7, 2003, Attorney Oleskey billed 0.70 hours for:
CONFERENCES WITH MS. TROWBRIDGE AND MR. SHANNON REGARDING POTENTIAL SUMMARY JUDGMENT AND SETTLEMENT ISSUES!-]
(Capitalization in original.) On that same day, Attorney Christine M. Trowbridge, a WilmerHale associate, billed 1.30 hours for, in part;
PREPARATION FOR AND CONFERENCE WITH MR. OLESKEY, MR. SHANNON REGARDING POSSIBLE SUMMARY JUDGMENT MOTION AND/OR SETTLEMENT STRATEGIES!.]
*370 (Capitalization in original.) Finally, also on November 7, 2003, Attorney Timothy R. Shannon (“Attorney Shannon”), a WilmerHale associate, billed 5.20 hours for, in part:
CONFERENCE WITH MR. OLESKEY AND MS. TROWBRIDGE REGARDING POTENTIAL MOTION FOR SUMMARY JUDGMENT, SETTLEMENT, AND NEXT STEPS . . .
(Capitalization in original.) One partner, at a rate of $475 per hour, and two associates, at rates of $280 and $255 per hour, therefore billed for the same event lasting under an hour.[6]
Additionally, May 12, 2005, Attorney Shannon billed 6.90 hours for, in part:
CONFERENCE WITH MS. PRICE AND MS. DAVIS REGARDING DOCUMENTS FOR MASTER EXHIBIT LIST. . .
(Capitalization in original.) On that same day, Heather Price (“Price”), classified as a paralegal/project assistant, billed 1.70 hours for:
MEET WITH MS. DAVIS AND MR. SHANNON REGARDING TRIAL PREPARATION!.]
(Capitalization in original.) Finally, also on May 12, 2005, Linda Lee Davis (“Davis”), also classified as a paralegal/project assistant, billed 3.20 hours for, in part:
CONFERENCE WITH MR. SHANNON AND MS. PRICE . . .
(Capitalization in original.) Therefore, one associate, at a rate of $340 per hour, and two paralegal/project assistants, at rates of $110 and $185 per hour, billed for the same event lasting almost two hours.
Although the record is replete with such duplication, this court recognizes that the defendants would not have been able to run their case as smoothly or efficiently as they did without all the hours spent, for example, conferencing with each other. WilmerHale’s representation of the defendants was clearly a team effort, and the team was very effective. Moreover, while this court agrees that the rates at which the defendants’ attorneys and paralegals billed their clients are high, those rates are consistent with WilmerHale’s status as a large Boston law firm. Nevertheless, this court will reduce the defendants’ request by 10% in recognition that some of these conferences and overlapping work was excessive, to a total of $1,161,395.10.[7] See Cholfin, 1998 WL 1182066; at *1 (“Due to the excessiveness of the fee, this court reduced the $42,327.50 fee incurred for legal services by approximately 55% for a total of $20,000”). The amount awarded in the court’s order does not include the attorneys fees incurred in preparing this post-trial G.L.c. 231, §6F, motion for fees and costs (fees and costs for which the defendants would be entitled to apply) because the defendants have not made such a request. See Stratos, 387 Mass. at 325 (“As a general rule, time spent in establishing and defending a fee, or objecting to an unduly small award, should be included in the final calculation of the award”).

II. Costs

Under G.L.c. 231, §6F, the defendants are entitled to costs in excess of costs under G.L.c. 261. See Waldman v. American Honda Motor Co., Inc., 413 Mass. 320, 324 n.10 (1992) (“[T]he punitive effect of G.L.c. 231, §6F, would be undermined if costs in excess of statutory costs were granted as ordinary costs under G.L.c. 261, §1”). The defendants seek $113,734.25 in costs, representing $987.00 in out-of-state witness travel costs, and $112,747.25 in professional/expert fees ($36,761.00), deposition and trial transcripts ($16,499.88), photocopying ($58,247.90), and “outside services” which the defendants define as vendors’ work and court copy charges ($1,238.47).
First, with respect to professional/expert fees, the defendants paid this amount to their experts[8] and to Gadsby Hannah for the work of Special Master Leonard Lewin.[9] This court is able to account for each of the disbursements the defendants set forth in “Total Costs Over Life of Case” in the defendants’ invoices. See supra notes 7, 8. The defendants included an invoice from Donald Bouchard (“Bouchard”) of Lincoln Property Company for $17,025.00 that the defendants paid in April 2006. This Lincoln invoice purports to be for “services rendered prior to and during the trial” and indicates that a “breakdown” is attached to the invoice. The defendants, however, have not included this breakdown. That notwithstanding, it was clear to the court at trial that Bouchard was indispensable to the defendants. He assisted the defendants in evaluating and rebutting Robert Coleman’s flawed appraisal, and Bouchard’s analysis obviously contributed to the defendants’ success in having the court strike the entirety of Coleman’s testimony and his retort. The defendants are therefore entitled to the full $17,025.00.
The defendants are entitled to the remaining amount they have requested not only because the payments they made for Special Master Lewin were reasonable for the work he performed and for the expert valuations the defendants obtained, but also because the plaintiffs have not objected to the reasonableness of Special Master Lewin’s fees. Accordingly, the plaintiffs must pay the defendants $36,761.00 in professional services/expert fees.
Second, the defendants have requested $16,499.88 for deposition and trial transcripts.[10] The defendants are entitled to these costs. But see Demoulas v. Demoulas, 432 Mass. 43, 64 (2000) (holding that “neither Mass.R.Civ.P. 54(d), nor G.L.c. 261, §1, [under which plaintiffs moved in that case] expressly authorizes the taxation of trial transcript costs. Nor does any other provision of G.L.c. 261 authorize the taxation of trial transcript expenses except as costs”). The defendants have broken down these disburse *371 ments in the invoices they have submitted, and this court was able to account for all of the disbursements with the exception of two. The first, an August 2003 disbursement of $473.17, appears as a transcript disbursement on the “Total Costs Over Life of Case” chart the defendants include as Exhibit 4. See supra note 7. The defendants’ invoices for August 2003 do not include any descriptions of the total disbursements for that month ($801.25), therefore there is no documentation of the $473.17 the defendants allege to have paid for transcripts in August 2003. This court will subtract that amount from the total the defendants seek for transcript costs.
The second is an April 2006 disbursement of $4,578.00 that is listed on the “Total Costs Over Life of Case” chart but that does not appear in the defendants’ invoices. The only transcript charge that appears in the invoice for legal services is $270.00 for a transcript of Edward Walter’s April 6-7, 2006, trial testimony.[11] This court will therefore subtract $4,308.00 from the total transcript costs the defendants seek.
This court will further subtract the amount of $568.20 that the defendants allegedly paid on January 28, 2003, because the description of that disbursement — "COPY OF TRANSCRIPT & LIVE NOTE, ETC."— is insufficient for this court to determine its reasonableness. (Capitalization in original.) There is no indication of what the transcript is of, nor have the defendants explained why they needed a copy. [12] Consequently, the defendants are entitled to $11,150.51 in transcript costs from the plaintiffs.
Third, the defendants request $1,238.47 in “outside services” consisting of vendors’ work and court copy charges.[13] These charges fall within the scope of compensable costs, and this amount is reasonable. The defendants are therefore entitled to $1,238.47. Fourth, the defendants request $987.00 in out-of-state witness travel costs for Sumner Schein (“Sch-ein”).[14] This amount is reasonable, especially in light of the important role Schein played in the trial. The defendants are entitled to this amount as well.
Finally, the defendants request $58,247.90 in photocopying charges at approximately $0.[15] per page.1£i Normally, this court does not include photocopying charges as part of a G.L.c. 231, §6F, award. See, e.g., Cholfin, 1998 WL 1182066, at *1 (excluding from G.L.c. 231, §6F, award “costs for photocopying, postage, telephone charges, faxes, legal research, travel, parking, filing fees, transcripts, summons or expedited delivery”); Fredkin v. Camelot IS-2 Int'l, Inc., Civil No. 001831, 2002 WL 1020665, *4 (Mass.Super.Ct. Apr. 17, 2002) (Kern, J.) (“subtracting costs for photocopying and facsimile expenses, postage and courier expenses and telephone expenses which this court considers part of the overhead and therefore included in [attorneys’ hourly] rates”). In this case, however, the plaintiffs subjected the defendants to unreasonable demands for documents spanning decades.
WilmerHale’s invoices account for the majority of the charges for photocopying by specifying the number of pages copied. On several occasions, however, the defendants describe amounts spent for “PHOTOCOPY OTHER" without explaining to what the “other” refers. (Capitalization in original.) These amounts range from $1.25 (June 2003) and $2.20 (May 2003) to $3,109.11 (September 2002) and $5,542.74 (August 2002)).[16] Furthermore, the defendants’ September 2002 invoice shows that the defendants paid $363.78 to outside vendor Scibelli & Whiteley for “REIMBURSEMENT’ without providing any details about this reimbursement, and paid $3,109.11 to outside vendor Uniscribe for photocopying and Bates stamping without specifying the number of pages that were photocopied and stamped, or at what rate. Added together, the “PHOTOCOPY OTHER" amounts and the outside vendor reimbursements total $19,429.55. Subtracting that from the total amount the defendants have requested leaves the amount of $38,818.35.
The defendants should not have to bear the full burden of these requests which were arguably excessive and unreasonable considering the plaintiffs’ knowledge of the futility of their claims. Consequently, this court finds that the plaintiffs must pay to the defendants $19,409.18, representing half of the $38,818.35 in photocopying costs.
Accordingly, the costs to which the defendants are entitled pursuant to G.L.c. 231, §6F, total $69,546.16.

ORDER

For the foregoing reasons and pursuant to G.L.c. 231, §6F, the plaintiffs are ORDERED to pay the defendants $1,161,375.10 in attorneys fees; the plaintiffs are also ORDERED to pay the defendants $19,409.18 for photocopying costs, $36,761.00 for professional services/expert fees, $11,150.51 fortran-script costs, $1,238.47 for outside services, and $987.00 for out-of-state-witness travel, totaling $69,546.16 in costs. The plaintiffs must remit these amounts to the individual defendants, and then, only once the individual defendants are fully reimbursed,[17] to the Partnership.

In their ortginal motion, and according to Attorney Stephen Oleskey’s affidavit in support, the defendants requested $1,295,258.00 in attorneys fees. The court renders this decision based on the defendants’ lower and more recent request of $1,290,439.00.

The plaintiffs assert and the defendants do not dispute that the Maple East Associates Limited Partnership (“Partnership”) paid $323,507.07 of the defendants’ attorneys fees. The plaintiffs do say that it would be inequitable for the defendants to retain that money as fees because “it is our money.” Section 13.4 of the Partnership Agreement, however, provides:
*372 No General Partner shall be liable, responsible or accountable in damages or otherwise to any of the partners for any acts performed by it within the scope of the authority conferred on the General Partners by this Agreement or for its failure or refusal to perform any acts except for acts or omissions constituting fraud, bad faith or willful misconduct. The partnership shall exonerate, indemnify and hold the General Partners harmless for or on account of any personal loss, cost, damage or expense which either or both General Partner may incur by reason of any act or omission while acting in good faith on behalf of the partnership.
The Partnership Agreement, therefore, provides for the indemnification of the partners for the payment of those fees. (The court also notes that, given that the plaintiffs held a 36% interest in the Partnership, the defendants themselves paid more than half of the $323,507.07.) Because the individual defendants are entitled to indemnification, the plaintiffs’ payments must be applied, first, to reimburse the individual defendants. Any remaining payments must be made to the Partnership, those assets to be distributed according to the Partnership Agreement.

The plaintiffs contend that the hours billed preparing for these ultimately rescheduled trial dates is excessive given that the defendants were preparing to try the same case each time. This argument is not a valid criticism, not only because these hours and rates include the actual trial, but also because trial preparation is an ongoing process, and is made even more so when trial dates are repeatedly rescheduled (for whatever reason).

The only description Attorney Oleskey gives for the 0.70 of an hour he billed on November 7, 2003 is the conference with Attorneys Trowbridge and Shannon, therefore it is reasonable to conclude that the conference lasted 0.70 of an hour.

 10% ($1,290,439.00) = $129,043.90; $1,290,439.00 - $129,043.90 = $1,161,395.10.

According to the defendants’ own invoices, the defendants paid $5,750.00 to Insignia/ESG, Inc. on June 2, 2003, for “PROFESSIONAL APPRAISAL SERVICES!;]” $868.00 to Lincoln Property Company on October 22, 2003, for “APPRAISAL SERVICES RENDERED THRU [sic] JULY 31, 2003" and $2,044.00, also on October 22, 2003, for ’’POST APPRAISAL SERVICES RE COLEMAN APPRAISAL, ETC. THRU [sic] 9/30/03 [;]” $5,100.00 to Lincoln Property Company on December 5, 2003, for “FINALIZATION EFFORTS RE VALUATION OF 23 EAST STREET!;]” and $2,444.00 to ‘THE REYNOLDS GROUP, INC.” on August 29, 2006, for “FEES FOR EXPERT WITNESS!.]” (Capitalization in original.)

According to the defendants’ own invoices, the defendants paid Gadsby Hannah $1,842.50 on December 9, 2002, representing the defendants’ “ONE-HALF SHARE” of the cost; $187.50 on January 3, 2003, “FOR PROFESSIONAL SERVICES FORTHE PERIOD ENDING 11/30/02[;]” $125.00 on February 4, 2003, “FOR PROFESSIONAL SERVICES FOR THE PERIOD ENDING DECEMBER 31, 2002[;]” $687.50 on April 25, 2003, for “PROFESSIONAL SERVICES RENDERED BYLEONARD LEWIN FORTHE PERIOD ENDING 3/31/03[;]” $312.50 on June 4, 2003 for “PROFESSIONAL SERVICES OF LEONARD LEWIN FOR PERIOD ENDING APRIL 30, 2003[;]” and $375.00 on June 24, 2003 for “PROFESSIONAL SERVICES OF LEONARD LEWIN FOR PERIOD ENDING MAY 31, 2003 . . .” (Capitalization in original.)

According to the defendants’ own invoices, they paid $2,182.75, total, for the transcript of Maila Walter’s September 23, 2002, deposition, and for the transcript of Robert Fronk’s September 25, 2002, deposition; $607.20 on January 14, 2003, for the transcript of Jeffrey Millman’s December 20, 2002, deposition; $568.20 on January 28, 2003, for a “COPY OF TRANSCRIPT & LIVE NOTE, ETC.!;]” $589.20 on March 11, 2003, for the transcript of Robert Wolffs February 19, 2003, deposition; $664.35 on March 13, 2003, for the transcript of John P. Fowler’s February 12, 2003, deposition; $894.75 on April 1, 2003, for the transcript of Jack Saltiel’s February 20, 2003, deposition; $1,055.75 on April 14, 2003, for the transcript of “DAY 2" of Robert L. Fronk’s January 10, 2003, deposition; $3,851.56 on May 23, 2003 for videos and transcripts of Edward Walter’s May 8-9, 2003, deposition; $413.20 and $397.75 on May 27, 2003, for the transcripts of Robert Wolffs May 7 and May 8, 2003 depositions, respectively; and $224.00 on May 1, 2006 for the transcript of Robert Coleman’s trial testimony. (Capitalization in original.)

There is an additional transcript disbursement in the April 2006 invoice of $231.00 for a “CERTIFIED TRANSCRIPT!.]” Without further description of this amount, however, this court cannot determine its reasonableness. Therefore, the defendants are not entitled to this amount.

As noted above, see supra note 7, the only other disbursement the defendants made for transcripts in January was $607.20 on January 14, 2003,forthe transcript ofJeffrey Millman’s December 20, 2002, deposition. The defendants paid these two January amounts to “Hennessey Corporation” therefore it is possible that the payment of $568.20 on January 28, 2003 was for an additional copy of Jeffrey Millman’s deposition transcript. Even if this copy is ofJeffrey Millman’s deposition, however, the defendants have not explained why they needed this additional copy, nor is it reasonable for the plaintiffs to be charged twice for the same transcript.

Accordingto ihe defendants’ invoices, they paid $126.00 on June 24, 2002, for the creation of Bates labels; $84.00 on July 8, 2002, for the creation of Bates labels; $7.00 on November 12, 2002, for obtaining a copy of a New Hampshire decision from the Hillsborough County Superior Court; $21.00 on March 5, 2003, for document numbering stickers; $10.50, $45.47, and $63.00 on April 1, 2003, for four sets of Bates labels; $34.00 on May 18, 2006, for document delivery from the Social Law Library; and $847.50 on June 30, 2006, for audio visual services.

The defendants provided a copy of the list of expenses Schein submitted to them: $807.00 for airline tickets, not including Schein’s first class upgrade; $172.00 for round trip driver services to and from the airport in Arizona ($86.00 each way); and $8.00 for parking at the courthouse in Cambridge.

The total requested for photocopying for a given month does not always appear to be $0.15 per page. See Defendant’s Invoices October 2005, November 2005, March 2006, April 2006, May 2006.

Specifically, WilmerHale billed for “PHOTOCOPY OTHER” in the following amounts:
June 2002 -$343.00; July 2002 - $104.00; August 2002 - $5,560.74 ($18.00 + $5,542.74); September 2002 - $32.00; October 2002 - $527.56; December 2002 - $32.34; January 2003 - $33.32; February 2003 - $448.99 ($340.74 + $43.25 + $65.00); March 2003 - $3,514.63 ($81.80 + $3,432.83); April 2003 - $3,148.97 ($53.72 + $3,088.75 + $6.50); May 2003 - $1,171.05 ($1,168.85 + $2.20); June 2003 - $40.85 ($39.60 + $1.25); August 2003 -$314.70; September 2003 - $15.40; October 2003 - $85.80; November 2003 - $7.50; April 2004 - $33.32; May 2004 - $60.00; April 2005 - $4.25; June 2006 - $478.24.
The total for all of these unexplained charges is $15,956.66.

The math indicates that the amount of the award will fully reimburse the individual defendants and that the reduction in the requested amount of fees as discussed in this opinion will mean that the Partnership will be reimbursed some, but not all, of the fees expended.